# Exhibit 1

**Commonwealth of Massachusetts**

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084 CV00554 B

*A TRUE COPY ATTEST*
*DEPUTY SHERIFF*
*Middlesex County*

Desmond Scaife, Jr., PLAINTIFF(S),

v.

Berklee College of Music, Inc.; Roger Brown, President;
Christopher Kandus-Fisher, DEFENDANT(S)
Jennifer Burke; and
Vidra Harris

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Berklee College of Music, Inc.
Clerk: Melissa Howe _____ (Defendant's name)
18 Oak St., Lexington MA 02421

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, Suffolk Co. Courthouse - 12th floor, Three Pemberton Square, Boston MA 02108 (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Attorney Ozell Hudson, Jr.; 434 Massachusetts Ave. - Suite 402 Boston MA 02118

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on *May 13*, 20 *20*.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

# PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20 ___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20 ___          Signature: _____

**N.B.**   **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Suffolk, ss

SUPERIOR COURT

DOCKET No. 2084CV00554-B

---

)

DESMOND SCAIFE, JR.,                )

      Plaintiff,                )

      v.                )

)

BERKLEE COLLEGE OF MUSIC, INC.;  )

ROGER BROWN, in his official capacity as )

President of Berklee College of Music, Inc.; )

CHRISTOPHER KANDUS-FISHER,       )

individually and as former Chief Equity   )

Officer; JENNIFER BURKE, individually   )

and as Director of Employee Relations;   )

and VIDRA HARRIS, individually and as  )

Senior Human Resources Business      )

Partner,                        )

      Defendants            )

---

## AMENDED COMPLAINT AND JURY DEMAND

# I.    INTRODUCTION

Plaintiff Desmond Scaife, Jr., brings this civil action for damages and equitable relief, against his former college and employer: Berklee College of Music, Inc. ("Berklee"); and its officers, managers, and employees: to redress Defendants breach of contract; and violations of the Massachusetts Fair Employment Practices Act, M.G.L.c. 151B § 4; and 42 U.S.C. sec. 1981 prohibition against retaliation based on race and or color.

## II. PRELIMINARY STATEMENT

This is a civil demand for damages and equitable relief, including specific performance, for breach of contract ("Berklee's Equity Policy"), for violating the following: denial of "basic fairness" in student and or employee related disciplinary proceedings; and retaliation in violation of G.L.c. 151B.; and 42 U.S.C. sec. 1981. The Equity Policy is a contract; applicable to Plaintiff as both a former Berklee student and employee . All the claims arise out of Berklee's two (2) alleged Equity Policy investigations of Plaintiff, concerning the same set of "reticent" students' sexual misconduct allegations, which reportedly occurred when Plaintiff was a student. Plaintiff graduated in August 2016. The first  investigation by Defendants Berklee, Kandus Fisher, and Vidra Harris  began on or about February 2017 through April 2017, when Plaintiff was employed as a part-time Teaching Assistant ("TA") : "Ensemble Coordinator" . Between the first and second investigations; on May 12, 2017 Plaintiff filed his

Massachusetts Commission Against Discrimination ("MCAD") Complaint against Berklee, Kandus-Fisher, and Harris. On or about November 16, 2017 Plaintiff submitted his resignation, to be effective at end of Fall semester: December 15, 2017. A second investigation was allegedly performed by Jennifer Burke, and authorized by Kandus -Fisher, occurred November 2017 through February 2018. This second investigation never happened. Defendant Kandus-Fisher, Chief Equity Officer, authorized both investigations, and he appointed Harris and Burke, respectively, as his investigators.

## III. <u>PARTIES</u>

1. Desmond Scaife, Jr. ("Plaintiff") is "Black" and or African American, and a resident of New York. At all relevant times herein, Plaintiff was either a student, or employee of the Berklee College of Music, Inc.

2. Defendant, Berklee College of Music, Inc. ("Berklee") at all relevant times herein, contracted with Plaintiff, to provide him a college education, and or employment; and to give him "basic fairness", in disciplinary investigation proceedings, pursuant to its Equity Policy, applicable to both students and employees. Berklee is an employer within the meaning of G.L.c. 151B. Berklee' principal place of business is at 1140 Boylston Street, Boston MA. Melissa Howe, Clerk for Berklee's Officers and Directors, is a resident of 18 Oak St., Lexington, MA 02421.

3. Defendant Roger Brown ("Brown'), is "White", the President of Berklee, and he is sued in his official capacity. His principal place of business is at 1140 Boylston Street, Boston MA, and he resides at 73 Somerset St., Belmont, MA 02478.

4. Defendant Christopher Kandus–Fisher ("Kandus-Fisher"), is "White" ; at all relevant times herein, he was Chief Equity Officer for Berklee ; and an employer within the meaning of G.L.c. 151B. Kandus -Fisher had primary responsibility for the creation, development, management, and administration of Berklee's Equity Policy. Kandus -Fisher's principal place of business was at Berklee, Division of Student Affairs, Diversity and Inclusion, Room 500, 921 Boylston Street, Boston MA 02215; and he resides at 783 E. Broadway, Boston, MA 02127

5. Defendant Jennifer Burke, ("Burke'), is "White" ; at all relevant times herein, she was Director of Employee Relations and Staffing for Berklee. Burke reported directly to Kandus -Fisher, concerning her alleged Equity Policy investigations. Burke's principal place of business is at Berklee, 1140 Boylston Street, MS-855-HR, Boston MA. Burke resides at 37 Queens Ter., Holliston, MA 01746.

6. Defendant Vidra Harris ("Harris"), is "Black." At all relevant times herein, Harris was Senior Human Resources Business Partner for Berklee. Pursuant to the Equity Policy, Harris reported directly to Kandus -Fisher, concerning her investigation of Plaintiff. Harris's principal place of business is at Berklee, 855 Boylston Street, 4th Floor, Boston MA 02215. Harris is a resident of 705 Salem Rd., Dracut, MA 01826.

## IV.  JURISDICTION

7.  All jurisdictional and administrative prerequisites for instituting this action have been met. On May 12, 2017, Plaintiff filed his Complaint with the Massachusetts Commission Against Discrimination (hereinafter "MCAD"). Scaife, claimed that Berklee, Kandus-Fisher, and Harris illegally discriminated against him on the basis of his "Sex, Male; Race/Color, Black ; (and caused) Retaliation" against him. Scaife, reasonably believed that Defendants had discriminated and retaliated against him because of his support for racial justice for Blacks. On January 29, 2018, the MCAD determined that it was not able to conclude a violation had occurred. Plaintiff's M.G.L.c. 151B retaliation claim relates to subsequent adverse action. On February 7, 2018, Defendants caused their Security police officers to physically remove Plaintiff from Berklee's campus. On February 12, 2018 Burke and Harris, respectively, issued writings that Plaintiff was "not eligible for re-hire", and he was "not permitted on Berklee premises..." These retaliation acts arose out of Plaintiff's earlier MCAD complaint; and does not require Plaintiff to file a separate charge with the MCAD. Carter v. Comm'r of Correction, 43 Mass. App. Ct. 212, 218 (1997) Moreover, no exhaustion of administrative remedy is required for Plaintiff's 42 U.S.C. sec. 1981 retaliation claim.

## V. STATEMENT OF FACTS

8. By 2017, Berklee's policy and process in student sexual misconduct cases, had eliminated any opportunity for a hearing of any kind. Berklee had adopted a procedure and practice ("Equity Policy"), for both students and or employees sexual harassment cases, wherein a Chief Equity Officer ( Kandus-Fisher) appoints a single Investigator (e.g. Harris and or Burke, respectively) to investigate, and decide whether the accused violated the policies, .

9. Pursuant to the Equity policy, Plaintiff was supposed to have been informed of his right to review and comment on all evidence, to refuse to comment or respond to accusations, offer witnesses and evidence, and be accompanied by an advisor of his choice ("e.g., student, faculty member, family member, attorney, etc.").

10. Under Berklee's procedures and practices the single Investigator would "prepare a confidential written summary of the evidence," which the accused was not permitted to see until the entire process had concluded.

11. For allegations of sexual misconduct, sexual harassment, and sex discrimination; the standard of evaluation was "preponderance of the evidence", instead of clear and convincing evidence.

12. Contrary to the Equity Policy, Plaintiff was not provided with written notice of any appeal rights. The Single Investigator's decision as to the "responsibility" (that is, guilt) of the accused was essentially final, with limited appellate review—among other things, the decision could not be overturned on the ground that it was incorrect, unfair, arbitrary,

or unsupported by the evidence.

13. Plaintiff had been an undergraduate student at Berklee until August 2016 when he graduated; and shortly thereafter he began working as a part-time Teaching Assistant ("TA"): Accompanist in the Ensemble Department.

14. Plaintiff was acquainted with another male Berklee student, "K. F."; however, they were neither engaged in a romantic nor sexual relationship. Allegedly, other unidentified student(s), "came forward and said that (Plaintiff) had engaged in …sexual misconduct". Plaintiff informed Harris, Burke, and Kandus-Fisher that he had only engaged in con-sensual relations while he was a student.

15.  Berklee has twice banned Plaintiff from all campus related activities, including "No Contact" with their related people and activities. The first "No Contact Order" was vacated on April 13, 2017, when Plaintiff was a TA; subsequently, Defendant Harris invited Plaintiff to return to campus immediately. Plaintiff received back pay and renewal of his part-time employment as a TA. He received no compensation for his severe emotional distress.

16. The unsubstantiated, and "reticent" student allegations of sexual misconduct were withdrawn in both investigations. Berklee has neither identified to Plaintiff the reticent confidential informants; nor the specific dates, times, and places of the reported sexual misconduct.

17. Berklee's investigators, concluded in both investigations, that Plaintiff was not found to have committed sexual misconduct; and no violation of Berklee's Equity Policy was proven, due to the "reticence" of unidentified reporting student(s). Nevertheless, in the second

investigation, Plaintiff was issued a "No Trespass" order, which was enforced and continues in effect through the present day.

18. After 2016, Berklee implemented a policy of informing potential future employers, of involuntarily terminated Berklee employees, of the terms of their removal.

19. Upon information and belief, Berklee has made such notations in Plaintiff's permanent educational and or employment record, which reports that he committed, or he was accused of committing serious sexual misconduct; and or Plaintiff was the subject of a "No Trespass," and "no(t) eligible for re-hire".

20. Berklee has denied Plaintiff access to his Electronic Stored Information ("E S I") containing approximately four (4) years of his music files; and further jeopardized his opportunities to gain admission to graduate school.

21. Plaintiff's opportunities to be admitted to graduate school, and gain employment as a teacher, has been adversely affected by Defendants labeling him in perpetuity, as a sexual predator, and "rapist," in Berklee students' group postings on social media, used by both Berklee's students and employees. Defendants have not caused its students to take down these harassing social media postings.

22. During the two (2) separate investigations, starting on February 27, 2017 by Defendant Harris; and revived on December 7, 2017 by Defendant Burke. Both investigations were approved by Defendant Kandus-Fisher. Neither could find evidence that Plaintiff was "responsible" for any of the alleged complaints against him. None of the allegations involved claims of rape or other violent sexual assault, or anything similar.

23. In connection with both sets of accusations, Plaintiff was informed

of a "no trespass"; and he was barred "… from coming to the Berklee campus or otherwise participating in college events…."

**March-April, 2017: The First Accusations**

24. Student K. F. had allegedly accused Plaintiff of sexual misconduct on or about January 30, 2017.

25. In February 2017, Berklee's Student Affairs contacted Plaintiff, to inform him that they needed to meet with him about something "highly important." Plaintiff responded to their message. He received an email from Defendant Harris proposing a meeting time. Since he was not sure what the meeting was about, Plaintiff invited his friend Kristina Waller ("Kristina) to attend the meeting as his witness.

26. Prior to meeting with Plaintiff and Kristina, Defendant Harris had Plaintiff to come alone into the office. Harris started to interrogate Plaintiff, without his witness being present. Harris, asked plaintiff: "If he knew what the meeting was about; if there was anything, he would like to say; and if he would like for his witness to be present when she ("Harris") read off the allegations?"

27. Plaintiff told Harris he was uncomfortable with her interrogating him; without his witness present, and because he had not had an opportunity to talk with anyone who would represent him. Only then, did Harris invite Plaintiff's witness into the inner office.

28. Harris gave Plaintiff the procedures checklist, a copy of the Equity Policy, a knowing your rights pamphlet, a charge letter, and a No Contact Order. (Defendant Burke provided none of this information to

Plaintiff during her alleged second investigation). Plaintiff was told he could only come on campus to pick-up a needed check.

29. On February 27, 2017 Berklee's Investigator, Defendant Harris, issued Plaintiff a punitive "Charge letter." She banned Plaintiff from the campus, classes, and his job; from contacting any member of the Berklee Community, via a third party, physically and or electronically (phone, text messaging, emails, social media, etc.); and sequestered Plaintiff off campus. The No-Contact order prohibited Plaintiff from being on the Berklee campus for any reason, except to meet with Defendant Harris.

30. The night after the meeting, Plaintiff drove around Boston terrified to be in the Berklee area or to go to his apartment, since he lived with Berklee students. Plaintiff was afraid that the Defendants had him under surveillance by security or the police. Since the Berklee investigation process was vague and traumatizing; Plaintiff felt as though he had been interrogated by the police; and he broke down and telephoned his mentor, former Berklee Professor Larry Watson.

31. Harris exiled Plaintiff from the Berklee community. Plaintiff was neither offered support, nor guidance, and he was not given the minimum information, to seek any assistance.

32. Plaintiff was compelled to hire a Lawyer, at $5,000 dollars, to serve as his representative during three (3) subsequent investigatory meetings, etc., with Harris.

33. During the first set of meetings, in March and April 2017, Defendant Harris read the allegations of sexual misconduct. She gave Plaintiff and his attorney neither names of alleged complainants nor witnesses Harris only provided vague periods of time. Plaintiff denied all the allegations. Even though the purpose of the next meeting was for

Harris to produce proof, to support the allegations; Harris produced <u>no</u> evidence. Harris gave Plaintiff and his attorney neither affidavits nor statements, or photos.

34. Even though the Equity Policy states that the accused should have been offered an "Advisor" of his choice; Harris misguided Plaintiff on this important point. Berklee violated its own policies, by not first offering Plaintiff an advisor. Plaintiff would have saved himself $5,000 in attorney fees, if Harris had initially informed him, that he could have chosen Professor Watson for his advisor. Subsequently, Professor Watson, wrote to the Berklee administration and Human Resources; and demanded that the "No Contact" order applicable to Plaintiff be vacated immediately, in time for the final concerts; and to allow Plaintiff to return to the many on-campus projects he was involved in.

35. In the final meeting with Vidra Harris, Plaintiff was given a letter informing him that the case had been dismissed due to "lack of evidence and reticence from each (alleged complaining) party to come forward." Plaintiff was notified that the "No Contact" order had been vacated; and he would receive back- pay, and that he was immediately invited to return to campus.

36. Plaintiff reasonably believed Defendants had targeted him for an Equity Policy investigation, because of his prior participation and support for racial justice: public protests concerning Bill Cosby, and Black Lives Matter. On May 12, 2017, Plaintiff filed his MCAD discrimination/ retaliation complaint against Defendants Berklee, Kandus-Fisher, and Harris.

37. The MCAD Complaint was subsequently served upon Defendants Berklee, Kandus-Fisher, and Harris, who had knowledge of Plaintiff's MCAD Complaint.

## November 2017-February 2018: The Second Alleged Investigation: Repeated Confidential Reticent Accusations

38. After Plaintiff graduated and moved to New York, Defendants Kandus-Fisher and Berklee, authorized Defendant Burke to initiate a second investigation of Plaintiff; based upon the same set of continuing reticent students' allegations.

39. Plaintiff's work as a performing artist, and his career options have been severely harmed. Plaintiff will have to explain and defend himself, from vague and unproven sexual misconduct allegations, regarding his applications for graduate schools, and for prospective employment.

40. On November 16, 2017, Plaintiff's T A position ended with Berklee's Ensemble Office.

41. On December 7, 2017 after Plaintiff had moved to New York , he received a call from Defendant Burke requesting a meeting. Plaintiff informed her that he would be out of New York City for the next few weeks. Burke offered to talk with him via phone. Plaintiff did not trust talking with Burke, because Berklee's Equity Policy was administered subjectively and capriciously. On December 7, 2017 Burke sent Plaintiff an email, with a letter stating he had violated the

Equity Policy; and that he was "to refrain from coming to campus until further notice;" and Plaintiff was not to contact K. F. in anyway. Burke's email and letter caused Plaintiff to begin to relive all his prior emotional distress and pain again.

42. Plaintiff did not reply to Burke's letter, since he had neither legal counsel nor an "advisor". On December 11, 2017 Burke sent Plaintiff another email with a "Charge Letter" attached. Plaintiff, replied by denying the allegation, and again asserted that any sexual interaction he had while a student at Berklee, was completely consensual. Plaintiff informed Burke of his extreme stress, and that he would not be able to meet before the semester was over on December 15, 2017. In that letter, Plaintiff told Burke that he would get in touch with her in the next two weeks through his lawyer. The next month and half were among the most stressful and depressing period of Plaintiff's life.

43. On December 12, 2017 Defendant Harris executed Plaintiff's 's "...Form: Termination," stating that Plaintiff was not eligible for re-hire. In addition, on December 11, 2017 and February 12, 2018, respectively, Burke issued Plaintiff a no-trespass order for all Berklee's premises. Also, on February 12, 2018 Burke wrote to Plaintiff that he was 'not eligible for rehire".

44. On December 12, 2017 Plaintiff attempted to access his Berklee email, however it had been deactivated with no prior notice. Plaintiff, immediately wrote to Jennifer Burke, and she claimed it was part of standard procedure, and that he would have to request an alumni account through the Registrar's office. It took more than a week, before Plaintiff was able to access his Berklee email. Also, Plaintiff was unable to gather many of the videos and music scores in his

Berklee drive, which he would need, in order to apply to Graduate School. Plaintiff was not allowed enough time to activate his account, to download all (5) five years of his video/MP3/sheet music material. Burke and Berklee were already prematurely punishing Plaintiff. This made Plaintiff very reluctant to talk to Burke without legal representation.

45. Plaintiff did not respond to Burke's final letter requesting a phone conference on Dec 20, 2017, because he was unable to reach his former attorney. Plaintiff was in Alabama for most of December attending to his very sick Grandfather.

46. During January 2018 plaintiff was again travelling to Mexico, Denmark, and Washington DC, for more performances; and trying to secure a residence in New York City.

47. On February 7, 2018, Plaintiff was in Boston for a show; he stopped by the Berklee Alumni Center; and visited Professor Watson's class. Within an hour of his arrival, a Berklee Police officer interrupted Professor Watson's class and told Plaintiff that he was not allowed to be present on campus, and that they were there to arrest him. Immediately, Prof Watson intervened; then the officer physically compelled Plaintiff to leave the Berklee campus. Plaintiff was traumatized by this event. Berklee did not keep the "no trespass" order against Plaintiff confidential.

48. Upon information and belief, the Berklee Policeman knew Plaintiff was on campus, because a female student had called Berklee Security, and reported Plaintiff's presence violated a "no trespass".

49. Neither Plaintiff nor Prof. Watson, his campus adviser, were informed by Defendants Burke or Berklee, about the severe adverse effect of the no-contact directive. Nevertheless, a female student knew

about Plaintiff's confidential student related information, and she reported it to the police.

50. The night of February 7, 2018 Plaintiff wrote a letter to Burke, denying that he had intentionally violated anyone; and that he misunderstood her letter, since he had never received an official no-contact order. The renewed investigation by Burke was very different from the first by Harris.

51. Burke responded that since Plaintiff had chosen not to participate, and the reporting party did not want to go forward with the charges, Berklee had decided to close the case. In addition, Burke prohibited Plaintiff from being on the Berklee campus; and from participating in any Berklee events as a guest or alumni. This retaliatory prohibition remains in effect.

52. Defendant Kandus-Fisher, a Respondent in Plaintiff's prior MCAD Complaint, did not recuse himself from oversight of the alleged second investigation by Burke. Kandus-Fisher was authorized to appoint Burke pursuant to the Equity Policy. Burke and Kandus-Fisher issued a second "No Trespass" against Plaintiff, which Berklee enforced on February 7, 2018; and it remains in effect to the present day.

53. Defendants Burke, and Kandus-Fisher concluded, based on the repeated same set of alleged "reticent" complainants; in which Berklee "...could not complete a full inquiry and reach a finding due to limited participation from parties involved in the case..."; that although Plaintiff had graduated, his employment had ended, and he had moved his residence to New York; nevertheless, Plaintiff was

"...not eligible for rehire in any capacity...(and he) was not permitted on Berklee premises for any reason including as alumni or guest."

54. Berklee's authority to discipline Plaintiff, without any proof of the alleged student sexual misconduct, cannot exceed the limits authorized by law. Berklee's relationship with its students is primarily contractual. However, this Court may review its disciplinary actions, to determine whether it provided "basic fairness" to Plaintiff, for his alleged student sexual misconduct.

55. Berklee must provide Plaintiff with some minimum level of fairness in the Equity Policy investigation proceedings. This goal is no longer considered achieved by the Office for Civil Rights of the Department of Education ("OCR-DOE"), which issued a "Dear Colleague" letter in 2011; demanding that universities make it easier for victims of sexual assault to make and prove their claims and for the schools to adopt punitive measures in response or face a loss of federal funding. *See* Russlynn Ali, Office for Civil Rights, U.S. Dep't of Educ., Dear Colleague Letter: Sexual Violence (Apr. 4, 2011)

56. Berklee appears to have substantially ignored, if not eliminated, Plaintiff's right to fairness in impartial proceedings. If Plaintiff as a former college student will be labeled for life as a sexual predator, then Berklee's Equity policy required he ought to have been given a fair opportunity to defend himself, before a neutral and unbiased decision maker.

# VI. STATEMENT OF CLAIMS

## COUNT ONE
## M. G. L. C. 260 sec.2: BREACH OF CONTRACT
### ALL DEFENDANTS

57. Plaintiff incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint and restates them as if fully set forth herein. Berklee's "Equity Policy" is a contract applicable to both its students, and former students; employees and former employees. Berklee, at all relevant times herein, contracted with Plaintiff Scaife, both as a student and or employee, respectively, to give him "basic fairness", in disciplinary investigation proceedings, pursuant to its Equity Policy. Plaintiff paid money for his tuition to Berklee, as well as, fees and other cost, in consideration for being registered as a Berklee student. Berklee's "Equity Policy", created enforceable actual contract rights, duties, and obligations between Berklee and Plaintiff; as a student, employee, and former employee. In the alternative, Berklee violated its own policies and procedures, as set forth in its Equity Policy, employee handbook, and or personnel manual, which form the basis of an employment contract, that is beyond at-will employment.

58. Plaintiff asserts a claim for breach of contract based on several specific alleged violations of the "Berklee …Equity Policy and Process" (Handbook and or Personnel Manual). It is well established that the "student-college relationship is essentially contractual in nature". *See, e.g., Mangla v. Brown Univ.*, 135 F. 3d 80, 83 (1st Cir. 1998) The terms of the contract may include statements provided in student manuals and registration materials." (Internal citations

omitted)); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 317 (D. Mass. 1997) ("Universities are capable of forming legally cognizable contractual relationships with their students. Brochures, policy manuals, and other advertisements can form the basis of such contractual agreements.").

59. Here, the Equity Policy clearly delineates between a "determination as to whether or not a policy violation occurred" on the one hand and "whether or not by a preponderance of the evidence (sic), there is sufficient credible evidence to support each allegation." The finding of "responsibility" is not entrusted entirely to a single person—the single Investigator—but also to the Director of Equity: Defendant Christopher Kandus- Fisher.

60. School disciplinary hearings (and or procedures) must be "conducted with basic fairness." *Cloud*, 720 F.2d at 725 (citing *Coveney*, 388 Mass. at 20); *Schaer*, 432 Mass. at 481. Berklee's obligation to provide basic fairness in its proceedings is separate from and in addition to its contractual obligation to follow the rules it set forth in the Equity Policy.

61. Under the single Investigator process, a single individual was essentially vested with the powers of an investigator, prosecutor, judge, and jury. Furthermore, those decisions were not reviewable except as to certain narrowly defined categories. Kandus-Fisher, a respondent in Plaintiff's MCAD complaint had all final authority .

62. The dangers of combining in a single individual the power to investigate prosecute, and convict, with little effective power of review, are obvious. No matter how well intentioned, such a person may have preconceptions and biases, may make mistakes, and may reach premature conclusions.

63. A neutral party can considerably mitigate the dangers of such a process if there is effective review, but here that right of review was substantially circumscribed. Kandus-Fisher was not a neutral party, since he was a named Respondent in Plaintiff's prior complaint for discrimination and or retaliation filed with the MCAD.

64. The single Investigator process, as set forth in Berklee's 2017 "… Equity Policy and Process" permitted an appeal on only three (3) grounds: new evidence is available; the investigation process was not adhered to; and sanctions assigned are disproportionate to sanctions issued to others…" Conspicuously absent from that list, is the ability to appeal on the ground that the evidence did not support the Investigator's decision, or that it was otherwise unfair, unwise, or simply wrong.

65. The Investigator had the first and only say in determining Plaintiff's guilt. Upon information and belief, Plaintiff's on campus adviser, Prof. Larry Watson, was not aware that any student or person in the past 23 years, had been restricted from the Berklee campus like Plaintiff.

66. Plaintiff was charged with serious offenses that carry the potential for substantial public condemnation and disgrace. He was required to defend himself in what was essentially an inquisitorial proceeding, that plausibly failed to provide him with a fair and reasonable opportunity, to be informed of the charges, and to present an adequate defense. Both the separate Harris investigation, and the Burke inquiry, ultimately found no evidence that Plaintiff was responsible. Nevertheless, Burke found Plaintiff responsible, for exercising his Equity contract right to not comment on alleged evidence; and all Burke's complaining witnesses were continuing to be reticent.

67. Nevertheless, Plaintiff received a penalty ( a continuing no-trespass/ no-contact order, and no re-hire) as a result of Burke's inquiry, which did not provide Plaintiff with any of the rights provided in the Equity Policy, including but not limited to: "...applicable policy, procedures, rights ...related to the investigation... and...the Investigative Procedures Checklist".

68. Burke did not inform Plaintiff of his right to appeal Berklee's lifetime no-trespass order, that may permanently injure Plaintiff for his life and career. Under the circumstances, Plaintiff plausibly shows that the procedures employed by Burke and Berklee, did not provide Plaintiff with the "basic fairness" to which he was entitled.

69. Pursuant to the Equity policy. Berklee's failure to maintain the confidentiality of Plaintiff's educational record; and (2) its failure to provide him with basic fairness in the discipline process, were plausibly a breach of contract.

70. Berklee breached the Equity Policy contract by defaming Plaintiff; by leaking information regarding the Special Investigator's findings to third parties.

71. Berklee aided and abetted the defamation of Plaintiff, by causing its security to publicly remove Plaintiff from the Berklee Campus, pursuant to the no contact order.

72. Burke, further breached the Equity Policy contract during the alleged second investigation, by the following: (a) not complying with even the minimum standard of proof (preponderance of evidence), since all student complainants were reticent; (b) Burke did not offer Plaintiff the opportunity to inspect all documents used as evidence; (c) Plaintiff was neither offered a college advocate; nor (d) an advisor to assist him through the Equity process; (e) not providing Plaintiff with

a copy of the Equity Policies and investigation procedures checklist, (f) Kandus -Fisher neither recused himself from the second alleged investigation, nor from his authority to originate an investigation, review investigators determination, approve Burke's finding, review Burke's order of "no contact-no trespass, and decide the appeal; and (g) Plaintiff was not notified of his appeal rights. Kandus-Fisher did not allow Plaintiff a meaningful route to an appeal.

73. Plaintiff performed all his contract obligations. As a result of Berklee's breach of the Equity Policy contract, Plaintiff has suffered actual compensatory damages, including but not limited to loss of employment opportunities and income; caused by the Defendants breach of contract. Plaintiff demands specific performance of the Equity Policy's guarantees of "basic fairness" in Defendant Berklee's disciplinary proceedings, and its contractual obligation to follow the rules Defendant Berklee set forth in the Equity Policy, which is separate from and in addition to guarantees of "basic fairness".

## COUNT TWO
## M. G. L. C. 151B § 4 : RETALIATION
DEFENDANTS BERKLEE, and KANDUS-FISHER

74. Plaintiff incorporates by reference the allegations in paragraphs 1 through 73 of this Complaint and restates them as if fully set forth herein.

75. Plaintiff participated in protected conduct by filing his May 12, 2017 MCAD Complaint, opposing what he reasonably believed in good faith to be Defendants Berklee's, and Kandus Fisher's invidious discrimination and or retaliation, based upon race.

76. Defendant Berklee, Kandus-Fisher, and Harris were named Respondents, in Plaintiff's G. L. c. 151B Complaint alleging discrimination and retaliation, filed on May 12, 2017 with the Massachusetts Commission Against Discrimination ("MCAD").

77. Defendants knew of Plaintiff's MCAD Complaint. On or about June 29 and or 30, 2017 Berklee (Burke), Kandus-Fisher, and Harris, signed and filed with the MCAD, their respective Affirmations, "...under the penalties of perjury," in support of their position statements.

78. On or about December 7, 2017 Defendant Burke and other Defendants renewed their Equity Policy investigations of Plaintiff. On or about December 11, 2017 Burke and other Defendants delivered to Scaife a "No Contact Order", to ban Plaintiff from the Berklee campus.

79. Defendant Burke, agent-in-fact, for Berklee and Defendant Kandus-Fisher, wrote to Plaintiff, that he was "...not eligible for rehire in any capacity...(and he) was not permitted on Berklee premises for any reason including as alumni or guest."

80. Plaintiff reasonably and in good faith believed that Defendants were engaged in wrongful discrimination based on his "... Race/Color, Black"; and caused "Retaliation" against him. Plaintiff acted reasonably in response to that belief in opposing the Defendant's practices. Defendants Berklee, Kandus – Fisher, Harris, and Burke, had the authority to take corrective measures on behalf of Berklee. Defendants had actual knowledge of the alleged discrimination, and

they failed to take reasonably objective remedial measures to stop the retaliation against Plaintiff.

81. Defendants' conduct amounted to "deliberate indifference" to their discrimination and retaliation conduct, which was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's work performance. Plaintiff reasonably believed that Defendants unlawful discrimination, and retaliation altered the terms and conditions of his employment and opportunity for re-employment.

82. Defendants desire to retaliate was a determinative factor in its decision to affect the Plaintiff's employment, and opportunity for re-employment.

83. The Defendants' discriminating acts, practices and conduct constitutes a "...a pattern, practice, or system (or) a continuous course of conduct..." constituting a violation pursuant to M.G.L.c. 151B and 804 C.M.R. § 110.

84. As a direct and proximate result of Defendants' retaliation against Plaintiff, Defendants violated M.G.L.c. 151B, and Plaintiff has suffered and continues to suffer lost wages, future lost wages, emotional distress, future emotional distress, future medical expenses, exemplary or punitive damages, attorney fees, and costs.

85. Plaintiff also sues to enjoin all defendants from continuing to retaliate because of his "...Race/Color, Black". Plaintiff request a Court Order, declaring null and void, all Berklee's retaliation acts against him, including but not limited to the no trespass; no contact; campus premises, and activities ban; and not eligible for re-hire.

## COUNT THREE
## 42 U.S.C. sec. 1981: RETALIATION
### DEFENDANTS BERKLEE, KANDUS-FISHER, and BURKE

86. Plaintiff incorporates by reference the allegations in paragraphs 1 through 85 of this Complaint and restates them as if fully set forth herein.

87. Plaintiff asserts a retaliation claim against Defendants Berklee, Kandus-Fisher, and Burke. Defendants Berklee, and Kandus-Fisher were named Respondents in Plaintiff's May 2017 MCAD Complaint, which included claims alleging discrimination and retaliation because of "…Race/Color, Black".

88. Defendant Burke, knew of Plaintiff's MCAD Complaint; and Burke had caused her Affirmation, "…under the penalties of perjury," to be filed with the MCAD, in support of Respondents (Defendants) Berklee's, Kandus-Fisher's, and Harris' MCAD position statement. Burke knew about Plaintiff's prior MCAD Complaint.

89. The Equity policy authorized Kandus -Fisher to appoint the investigator (Burke); and to "…oversee each investigation and insure the sufficiency of the evidence."

90. Defendant Kandus-Fisher, acting in concert with Defendant Burke, caused Plaintiff to be indefinitely barred from Berklee's campus, activities, and events; and excluded Plaintiff from all future employment opportunities with Berklee, because of his race (Black).

91. Defendants refused to consider Plaintiff eligible for re-hire, and for re-entry into a contract of employment with Plaintiff, because of his race; and retaliated against him. Defendants desire to retaliate based upon race was a determinative factor, in its decision to affect the Plaintiff's employment.

92. As a direct and proximate result of Defendants' retaliation against Plaintiff, Defendants violated 42 U.S.C. sec. 1981; and Plaintiff has suffered and continues to suffer lost wages, future lost wages, emotional distress, future emotional distress, future medical expenses, exemplary or punitive damages, attorney fees, and costs. Plaintiff sues to enjoin all defendants from continuing to retaliate against Plaintiff because of "Race/Color, Black", by denying him the opportunities for re-employment. Plaintiff request a Court Order, declaring null and void, all Berklee's retaliation acts against him, including but not limited to the no trespass; no contact; campus premises, and activities ban; and not eligible for re-hire. Plaintiff

## DEMAND FOR A JURY TRIAL

PURSUANT TO MASS. R. CIV. P. 38(B) PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

**WHEREFORE**, Plaintiff prays that this court:

1. Enter judgment against the Defendants on all counts of the Complaint;

2. Award Plaintiff compensatory damages, including but not limited to future medical expenses, lost earnings capacity, and compensation for emotional distress.

3. Award Plaintiff punitive damages against Defendants Berklee, Burke, Kandus-Fisher, and Harris.

4. Award Plaintiff multiple damages as provided by law.

5. Award Plaintiff all cost incurred in the prosecution of this action including reasonable attorneys' fees, pursuant to G. L. c. 151B and 42 U.S.C. sec. 1988.

6. Pursuant to M. G. L. c. 231 sec. 6C award Plaintiff pre-judgment interest, at rate of 12% per annum from date of breach or demand; or from date of commencement of action.

7. Permanently enjoin Defendants Berklee, President Brown, Burke, Kandus-Fisher, and Harris from retaliating against Plaintiff; from enforcing their "no contact" "and or "no trespass" orders; from taking any actions to continue to deny Plaintiff any opportunities for employment with Berklee, and or with performing artists, whose rehearsals take place on the Berklee Boston campus, and other Berklee Premises; and or opportunities to network at other Berklee venues, including but not limited to any in New York City; and from taking any action to deny Plaintiff employment, for any action or inaction, which arose out of the occurrences and or subject matter, of his MCAD Complaint, and or this Superior Court Complaint, and Jury Demand. Plaintiff prays for an injunction prohibiting Defendant Berklee from refusing to enter contracts of employment,

because of his race and or color: "Black"; and or entering into employment contracts with discriminatory terms and conditions.

8. Award Plaintiff specific performance of the Equity Policy's guarantees of "basic fairness" in Defendant Berklee's disciplinary proceedings; and specific performance of Defendant's contractual obligation to follow the rules, as Defendant Berklee have set forth in their Equity Policy, which is separate from and in addition to guarantees of "basic fairness".

9. Provide such further relief as appears to the court to be equitable and just, including but not limited to specific performance of the Equity Policy; and enjoining all Defendants from retaliating, on the basis of "…Race/Color, Black" .

Dated this August 19, 2020

Respectfully Submitted,

Plaintiff Desmond Scaife

By his Attorney

Ozell Hudson, Jr., BO# 556269

434 Massachusetts Ave., Suite 402

Boston, MA 02118

Tel. (617) 267-0662

Email:Ohudsonlaw@aol.com

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2084CV00554 *B* | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Scaiffe, Jr., Desmond vs. Berklee College of Music et al | Michael Joseph Donovan, Clerk of Court |
|---|---|

| TO: Ozell Hudson, Jr., Esq. Law Offices of Ozell Hudson, JR. 434 Massachusetts Ave Suite 402 Boston, MA 02118 | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |
|---|---|

## TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                                    **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 05/26/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 06/25/2020 | |
| All motions under MRCP 12, 19, and 20 | 06/25/2020 | 07/27/2020 | 08/24/2020 |
| All motions under MRCP 15 | 04/21/2021 | 05/21/2021 | 05/21/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 02/15/2022 | | |
| All motions under MRCP 56 | 03/17/2022 | 04/18/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/15/2022 |
| Case shall be resolved and judgment shall issue by | | | 02/27/2023 |

**The final pre-trial deadline is not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 02/27/2020 | ASSISTANT CLERK Christine M Hayes | PHONE (617)788-8141 |
|---|---|---|

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2084CV00554-B | Trial Court of Massachusetts The Superior Court |
|---|---|---|

PLAINTIFF(S): Desmond Scaife

ADDRESS: 511 Madison St. Brooklyn, NY 11221

ATTORNEY: Ozell Hudson Jr. Esq.

ADDRESS: 434 Massachusetts Ave. #402 Boston, MA 02188

BBO: 556269

COUNTY Suffolk

DEFENDANT(S): Berklee College of Music; Pres. Roger Brown; Christopher Kandus-Fisher; Jennifer Burke; and Vidra Harris

ADDRESS: 1140 Boylston St. Boston MA 02215

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. 001 | TYPE OF ACTION (specify) Specific Performance-Contract | TRACK A | HAS A JURY CLAIM BEEN MADE? ☒ YES ☐ NO |
|---|---|---|---|

*If "Other" please describe: and Retaliation :4

Is there a claim under G.L. c. 93A? ☐ YES ☒ NO

Is this a class action under Mass. R. Civ. P. 23? ☐ YES ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................. $
2. Total doctor expenses ................................................. $
3. Total chiropractic expenses ................................................. $
4. Total physical therapy expenses ................................................. $
5. Total other expenses (describe below) estimated LICSW to date ......... $ 2,500

Subtotal (A): 

B. Documented lost wages and compensation to date ................................................. $
C. Documented property damages to date ................................................. $ 25,000
D. Reasonably anticipated future medical and hospital expenses ................................................. $ 25,000
E. Reasonably anticipated lost wages $150,000 ................................................. $ 50,000
F. Other documented items of damages (describe below) ................................................. $ 202,500

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Severe emotional distress = $350,000 TOTAL (A-F): $ 552,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X Ozell Hudson, Jr. Date: 08-19-2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X Ozell Hudson, Jr. Date: 08-19-2020

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084CV00554B

Desmond Scaife, Jr., PLAINTIFF(S),

v.

Berklee College of Music, Inc.,
Christopher Kandus-Fisher; DEFENDANT(S)
Jennifer Burke; and
Vidra Harris

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Christopher Kandus-Fisher
783 E. Broadway, Boston MA (Defendant's name)
02127

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, Suffolk Co. Courthouse - 12th floor, Three Pemberton Square, Boston MA (address), by mail or in person, **AND** 02108
   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Atty. Ozell Hudson, Jr. 934 Massachusetts Ave. - Suite 402 Boston MA 02118

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

A true copy Attest:

8-24-20 Deputy Sheriff Suffolk County

4.    Legal Assistance. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.    Required information on all filings: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _May 13_, 20 _20_.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___        Signature: _____

N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

# Commonwealth of Massachusetts

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

SUFFOLK, ss.

No. 2084 *CV 00554 B*

Desmond Scaife, Jr. , Plaintiff(s)

v.

Berklee College of Music, Inc.; Roger Brown, President; Christopher Kandus-Fisher; Jennifer Burke; and Vidra Harris , Defendant(s)

## SUMMONS

To the above-named Defendant: Jennifer Burke, 37 Queens Terrace, Holliston MA 01746

You are hereby summoned and required to serve upon Attorney Ozell Hudson, Jr.; Law Offices of Ozell Hudson, Jr. 434 Massachusetts Ave. Suite 402 plaintiff's attorney, whose address is Boston, MA 02118 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the 13th day of May , in the year of our Lord two thousand Twenty .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P. 1  12M – 1/15

# PROOF OF SERVICE OF PROCESS

I hereby certify and return that on Sept. 08, 2020, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5): Amended Cover Sheet and Tracking Order Via Email to Atty. Laurie R. Bishop, General Counsel for defendant Berklee College of Music Inc.; and attorney for Named defendants: who stated in her emails to Plaintiffs atty. on April 22, 28, and Aug. 26, 2020 that she was authorized to accept service on their behalf and have agreed to do so via email (see attached email copies)

Dated: Sept. 08, 2020.

Odell Hudson, Jr.
BBO# 556269
434 Massachusetts Ave.
Suite 402
Boston, MA 02118

**N.B.    TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

Sept. 08 , 2020.

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 2084CV00554 B

Desmond Scaife, Jr. , Plff(s).

Berklee College of Music, Inc.; Roger Brown, President; Christopher Kandus-Fisher, Senior, Ter Burke; and Vidra Harris , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _2084CV00554 B_

_Desmond Scaife, Jr_ , Plaintiff(s)

v.

_Berklee College of Music, Inc.; Roger Brown, President;
Christopher Kandus-Fisher; Jennifer Burke; and
Vidra Harris_ , Defendant(s)

## SUMMONS

To the above-named Defendant: _Roger Brown, 73 Somerset St., Belmont MA 02478_

You are hereby summoned and required to serve upon _Attorney Ozell Hudson, Jr._
_Law Offices of Ozell Hudson, Jr._
plaintiff's attorney, whose address is _434 Massachusetts Ave. - Suite 402_
_Boston, MA 02118_ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the _13th_ day of
_May_ , in the year of our Lord two thousand _Twenty_ .

_Michael Joseph Donovan_
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P. 1 12M – 1/15

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on Sept. 08, 2020, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

Via email to Laurie R. Bishop, General Counsel for defendant
Berklee College of Music; Inc., and named defendants who stated
in emails of April 22, 28 and Aug 26, 2020 that she was authorized to accept
service on their behalf and
have agreed to do so, via emails. _(signature)_ Ezell Hudson, Jr.

Dated: Sept. 08, 2020 (See
Attached     BBO# 556269
Copies       434 Massachusetts Ave.
of emails)   Suite 402
             Boston MA 02118

**N.B.    TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

> Sept. 08 , 2020

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 2084CV00554 B

Desmond Scaife, Jr. , Plff(s).

v.

Berklee College of Music, Inc.; Roger Brown,
President; Christopher Kandus-fisher;
Jennifer Burke; and
Vidra Harris , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 2084 CV 00554 B

Desmond Scaife, Jr. , Plaintiff(s)

v.

_____, Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant: Vidra Harris, 705 Salem Rd. Dracut MA 01826

You are hereby summoned and required to serve upon Attorney Ozell Hudson, Jr. Law Offices of Ozell Hudson, Jr. plaintiff's attorney, whose address is 434 Massachusetts Ave., Suite 402, Boston MA 02118 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the _____13th_____ day of ___MAY___, in the year of our Lord two thousand ___Twenty___ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on Sept. 08, 2000, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5): *Amended Cover Sheet, and Tracking Order Via Email to Atty. Laurie R. Bishop, General Counsel for defendant, Berklee College of Music, Inc., and Atty for Named defendants. She stated in her emails to Plaintiff's Counsel on April 22, 28, and Aug. 26, 2020 that she was authorized to accept service on their behalf and have agreed to do so via email. See attached email copies.*

Dated: Sept. 08, 2020

*Ozell Hudson, Jr.*
*BBO# 556269*
*434 Massachusetts Ave.*
*Suite 402*
*Boston, MA 02118*

**N.B.  TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

Sept. 08 , 2020.

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 2084CV00554B

Desmond Scaife, Jr. , Plff(s).

v.

Berklee College of Music, Inc.; Roger Brown, President; Christopher Kandus-Fisher; Jennifer Burke; and Vidra Harris , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)